IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SHEILA COOLEY,
O/B/O ROYCE COOLEY, DECEASED

    Plaintiff,

v.                                    CASE NO. 1:14-cv-243-MP-GRJ

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability and Disability Insurance Benefits under Title II of the Social Security Act. (ECF No. 1). The Commissioner has answered (ECF No. 9), and both parties have filed briefs outlining their respective positions. (ECF Nos. 14 & 15). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Claimant Royce Cooley filed his application for disability and Disability Insurance Benefits on July 16, 2008, alleging a disability onset

date of May 25, 2006. (R. 133.) Claimant's application was denied initially and upon reconsideration. (R. 51-54.) An administrative law judge (ALJ) conducted a hearing and entered a decision on July 7, 2010 finding Claimant not disabled. (R. 14-20.) The Appeals Council denied Claimant's request for review on May 18, 2012. (R. 1-4.) Claimant filed an action in this Court, and the undersigned reversed and remanded the ALJ's decision for further proceedings to determine whether Claimant met the requirements of Listing 12.05C. (R. 664-676.) Claimant passed away and Plaintiff, Sheila Cooley, was substituted in his place. (R. 632, 728.)  After a hearing on July 11, 2014, the ALJ found Claimant not disabled. (R. 606-628.) Plaintiff filed the Complaint in this case on December 23, 2014. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person

---

[1] *See* 42 U.S.C. § 405(g) (2000).

would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful

---

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

---

[6] 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the Medical-

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a Vocational Expert's ("VE")

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). See Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

Because Plaintiff's challenge on appeal pertains only to the Claimant's mental impairments, the summary of the record is limited to evidence relevant to those impairments.

### A.   Medical Evidence

Dr. Lance Chodosh examined Claimant as part of a disability determination on April 13, 2007.  With respect to Claimant's mental capacity, he opined that Claimant "seemed to have intellectual limitations." Based on the information provided by Claimant, he wrote that Claimant last worked as a maintenance person, doing odd jobs, in May 2001.  Dr. Chodosh stated that Claimant held that job for nine years but stopped when he was incarcerated for stealing money.  Dr. Chodosh wrote that Claimant completed the 12th grade and claimed to have a high school

---

[20] *See id.*

diploma, despite lacking documentation. Dr. Chodosh stated that Plaintiff is illiterate. Dr. Chodosh further reported that Plaintiff "[was] independent in activities of daily living. He reports normal physical functions, able to walk, stand, sit, stoop, squat, lift and use hands normally. He can drive. Vision, hearing and speech are also normal." (R. 397-400.)

Dr. Carmen Tozzo-Julian conducted a psychological consultative evaluation of Claimant on March 6, 2009. Claimant was referred to Dr. Tozzo-Julian to "assess current cognitive functioning, to rule out a learning disability, a history of depression, and any personality characteristics that may affect his ability to work."

Claimant reported to Dr. Tozzo-Julian that he had been working part-time by stocking shelves at a convenience store. He stated that he had difficultly learning to read and write and took special education class throughout elementary, junior high and high school. He obtained a high school diploma. His past work included working as a janitor, working in a factor, and stocking shelves.

Claimant told Dr. Tozzo-Julian that he had been married for a year, and was currently divorced. He had a 28 year old son. Claimant reported a long history of alcohol abuse and a history of smoking for 38 years.

Dr. Tozzo-Julian opined that Claimant was neatly dressed and appropriately groomed, and was "a pleasant individual who was cooperative throughout the evaluation." Dr. Tozzo-Julian wrote that Claimant's speech was hesitant, and his expressive and receptive language were normative. Claimant drove himself to the evaluation.

Dr. Tozzo-Julian found Claimant to be alert and fully oriented, with mildly impaired attention. Dr. Tozzo-Julian stated that Claimant could complete serial threes but made three errors on serial sevens. Claimant could not spell 'world' backward. Dr. Tozzo-Julian opined that his digit span was moderately impaired for backward span. Dr. Tozzo-Julian further found that Claimant's memory functions were mildly impaired and his thoughts were "somewhat concrete." Claimant's verbal reasoning skills were below average. Claimant's Verbal IQ score was 69, his Performance IQ score was 87, and his Full Scale IQ score was 76.

Dr. Tozzo-Julian diagnosed Claimant with Dysthymic Disorder, Generalized Anxiety Disorder, Nicotine Abuse, Continuous, Alcohol Abuse, in partial remission, Reading Disorder, Disorder of Written Expression, and Mathematics Disorder. Dr. Tozzo-Julian assessed Claimant's Global Assessment of Functioning as 55. (R. 508-513.)

*Page 10 of 20*

**B.     Hearing Testimony**

Plaintiff testified on behalf of the deceased Claimant at a hearing in front of the ALJ on July 11, 2014.  She was married to Claimant from January 2011 until his death. She testified that she helped Claimant read and write, and she attempted to teach him to write checks. She stated that she had to help him read and explain the test from the Florida Department of Education used to assess his mental limitations.

Plaintiff testified that Claimant was shy and reserved, which she assumed was due to low self-esteem.  The Claimant developed neuropathy, which caused his hands to shake, so Plaintiff helped Claimant eat and walk up stairs.  She stated that Claimant did not spend much time on his hygiene, other than a daily five minute shower. (R. 631-643.)

Claimant testified on his own behalf during the prior hearing in front of an ALJ on June 11, 2010.  He attended special education classes in school, and graduated from a work study program.  He previously worked at the Holiday Inn as a houseman, laundry attendant, maintenance man, and night security guard.  He worked at Princess Martha, a retirement home, for about seven years until he was placed in prison.  In prison the Claimant worked for a landfill.  (R. 645-658.)

**C.     Findings of the ALJ**

The ALJ found that Plaintiff did not meet Listing 12.05C:

"Here, there is no evidence of deficits in adaptive functioning. Indeed, the claimant performed SVP-3 level work as a material handler and maintenance engineer for many years with no allegations of accommodated work.  In 2007, in relation to a prior application for disability benefits, the claimant independently completed an Activities of Daily Living form, and provided relevant hand written answers to the questions asked. The claimant reported that he cooked, performed personal care, laundry, shopping, driving, housecleaning.  The claimant filed a similar report in 2008 and married in 2011."

(R. 614)(internal citations omitted).  The ALJ made an alternative finding, that even if Claimant did exhibit deficits in adaptive functioning, Claimant did not meet any of the other criteria for listing 12.05.  The ALJ stated that Claimant did not meet the "paragraph C" criteria because, even assuming deficits in adaptive functioning and a valid IQ score of 69, Claimant did not have a "physical or other mental impairment imposing an additional and significant work-related limitation of function," as required by Listing 12.05C.  The ALJ also found that Claimant did not meet the criteria of paragraphs A, B, or D, and thus did not meet a listing under 12.05.  The ALJ found at Step Four that the Claimant was capable of performing light work, with several limitations, and could perform past relevant work as a

housekeeping cleaner.  Because Claimant could perform past relevant work, the ALJ determined that Claimant was not disabled. (R. 614-620.)

## IV.  DISCUSSION

Claimant appealed the ALJ's 2011 finding that Claimant was not disabled.  The undersigned reversed and remanded the decision of the Commissioner for further proceedings to expressly determine whether Claimant met Listing 12.05C.  After a hearing, the ALJ found that Claimant did not meet Listing 12.05C and again found Claimant not disabled.  Claimant appealed the ALJ's decision to this Court.

To meet a Listing, a claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  The claimant bears the burden of demonstrating that he meets a Listing.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

The Listing at issue, Listing 12.05C, addresses intellectual disability.  To meet this Listing, a claimant must have (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) manifested deficits in adaptive behavior before age 22.  *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The claimant must also

meet one of the four sets of criteria in paragraphs A, B, C, or D.  20 C.F.R. part 404, subpt. P app. 1, 12.00 (A).  Listing 12.05C requires a showing of (1) a valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.* at 12.05C.

The ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals a listing.  While the ALJ is not required to explicitly discuss each Listing where he applies the appropriate sequential analysis and his conclusions are supported by substantial evidence—*see, e.g., Battle v. Astrue,* 243 Fed. Appx. 514, 519-21 (11th Cir. 2007) (unpublished)[21] (rejecting claimant's argument that ALJ is legally required to explicitly evaluate the IQ score and 12.05 Listing)—on remand, the ALJ in this case expressly discussed Listing 12.05C, finding that Plaintiff did not have deficits in adaptive functioning sufficient to meet the listing.

While there is no definition of adaptive functioning in Listing 12.05, the applicable regulations permit an ALJ to use "any of the measurement

---

[21] Although unpublished opinions are not binding on this Court, they are persuasive authority.  11th Cir. R. 36-2.

methods recognized and endorsed by the professional organizations" to satisfy the elements of Listing 12.05. 67 Fed. Reg. 20018, 20022. Although an ALJ may apply different definitions of "adaptive functioning," the Eleventh Circuit makes clear that when a claimant's daily activities and behavior are significantly inconsistent with their valid IQ score, the claimant does not meet Listing 12.05C. *Outlaw v. Barnhart*, 198 F. App'x 825, 827 (11th Cir. 2006); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

In his written decision, the ALJ determined that Claimant had no significant deficits in adaptive functioning. In making this determination, the ALJ relied upon Claimant's prior work history, which included work as a maintenance engineer and a material handler, and pointed out that Claimant made no allegations of accommodated work. Claimant's testimony reflects that previously he worked various jobs at a Holiday Inn and he worked at a retirement home for about seven years until he was imprisoned for stealing money from the employer. (R. 615.) The ALJ may use evidence of a claimant's previous work—without special accommodations—to support a finding that a claimant does not have deficits in adaptive functioning. *See, e.g. O'Neal v. Comm'r of Soc. Sec.,*

No. 14-14011, 2015 WL 3605682, at *3 (11th Cir. June 10, 2015); *Perkins v. Comm'r of Soc. Sec.*, 553 F. App'x 870, 873 (11th Cir. 2014); *Harris v. Comm'r of Soc. Sec.*, 505 F. App'x 874, 876 (11 th Cir. 2013); *Outlaw*, 197 F. App'x at 827.

In addition to relying upon Claimant's prior work history, the ALJ also referenced Claimant's self-reported activities as evidence supporting the finding that claimant lacks deficits in adaptive functioning. Specifically, the ALJ noted that for a separate application for disability in 2007, Claimant filled out an Activities of Daily Living form, representing that he would cook, dress, clean house, wash laundry, shop, conduct social activities, and perform home maintenance. (R. 216-18, 614.)

In August 2008, in a Social Security Administration Function Report, Claimant stated that during the day, he would straighten the house, rake leaves, mow the lawn, and watch television. (R. 256.) Claimant also denied limitations in his ability to perform personal care and stated that he shopped for groceries, wrote checks with help, went to church, prepared food in the microwave, drove a car, and rode a bicycle. (R. 256-59.) Claimant also testified that he supported himself through odd jobs. (R.

618-19.)

In addition the other medical evidence of record demonstrates that Claimant did not have deficits in adaptive functioning.  Dr. Chodosh noted that Claimant "[was] independent in activities of daily living" and could drive.  (R. 397.)  Claimant also reported to Dr. Tozzo-Julian that he worked part-time stocking shelves, that he was married, and that he graduated high school with a diploma.  (R. 508-513.)  Additionally, after evaluating Plaintiff, Dr. Tozzo-Julian opined that Claimant was a good candidate for vocational counseling.  *Id.*

In sum, the ALJ's determination that Plaintiff does not have the requisite deficits in adaptive functioning to meet Listing 12.05C is fully supported by substantial evidence in the record.

Relying upon *Ambers v. Heckler*, 736 F.2d 1467 (11th Cir. 1984), Plaintiff argues that Claimant is entitled to a "conclusive presumption of disability" under the listings and that it is error for the ALJ to find Claimant not disabled.  In *Ambers*, the claimant was gainfully employed in the past with her impairments, but after she stopped working, she met the disability Listing 12.05B.  The Eleventh Circuit held that despite the testimony from a

vocational expert that the claimant was able to return to her past relevant work, she was still disabled because she met Listing 12.05B and the sequential analysis should stop at that step.

*Ambers* is not instructive regarding the situation in this case. The issue in *Ambers* was whether a claimant could be considered disabled under Listing 12.05B where the claimant meets the listing but an expert testifies that the claimant can, nonetheless, perform her past relevant work. The *Ambers* Court correctly found that when a court finds that a claimant meets a listing the analysis ends there and any testimony regarding the ability to perform past relevant work at the next step in the sequential analysis is not necessary. *Ambers* says nothing about whether an ALJ may consider past work in assessing whether a claimant has deficits of adaptive functioning. On this issue Eleventh Circuit law is consistent. A court may review a claimant's past work in assessing whether a claimant has deficits in adaptive functioning. *O'Neal*, 2015 WL 3605682, at *3 (holding claimant's ability to work as dishwasher for many years without special accommodation or training supported finding claimant did not have sufficient deficits in adaptive functioning).

Further, relying upon *Hodges v. Barnhart*, 276 F.3d 1269 (11th Cir.

2001) Plaintiff argues that Claimant meets the criteria for "presumptive disability" under listing 12.05C because of his verbal IQ test score of 69. In *Hodges*, the Eleventh Circuit joined other circuits in assuming that—absent evidence of trauma that would cause intellectual disability—an IQ test performed *after* age twenty-two creates a "rebuttable presumption" that a claimant had a mental impairment before age twenty-two because IQ scores remain fairly constant throughout life. Thus, the claimant in *Hodges* did not need to present affirmative evidence that he manifested a mental impairment prior to the age of twenty-two as required by the Listing.

This case is different from *Hodges*. In this case the Court remanded the case because the ALJ had not specifically addressed whether Claimant met Listing 12.05. Thus, on remand the ALJ's function was to review the evidence and determine whether the Claimant met the Listing. In *Hodges* the ALJ had addressed the Listing but had failed to apply the presumption that a valid IQ score after the age of twenty-two creates a rebuttable presumption that the claimant had the same mental impairments before the age of twenty-two. Thus, in contrast to *Hodges,* here the ALJ was required to address in the first instance whether the claimant met all of the criteria of Listing 12.05. That is exactly what the ALJ did. The ALJ analyzed each of

the criteria and concluded that the evidence did not demonstrate sufficient deficits in adaptive functioning, an essential requirement to meet Listing 12.05.

Furthermore, Plaintiff's argument ignores the ALJ's alternate finding, that even if Claimant did exhibit deficits in adaptive functioning, Claimant did not meet the "paragraph C" criteria of listing 12.05 because Claimant did not have a physical or other mental impairment imposing an additional and significant work-related limitation of function. Plaintiff has not challenged this determination. Because substantial evidence does not demonstrate that Claimant met all of the criteria for Listing 12.05, the Claimant has failed to establish that he is entitled to a presumption of disability.

Accordingly, for these reasons, the Court concludes that the ALJ did not err in finding that Claimant did not meet Listing 12.05C because substantial evidence supports the ALJ's finding that Claimant did not have sufficient deficits in adaptive functioning.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 31st day of December 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.